Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GURINDER SANDHU, | Case No. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| XILINX, INC., DENNIS SEGERS, VICTOR PENG, RAMAN CHITKARA, SAAR GILLAI, RONALD S. JANKOV, MARY LOUISE KRAKAUER, THOMAS H. LEE, JON A. OLSON, and ELIZABETH VANDERSLICE, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Gurinder Sandhu ("Plaintiff"), on behalf of herself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1.     This is an action brought by Plaintiff against Xilinx, Inc. ("Xilinx" or the "Company") and the members of Xilinx's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Xilinx will be acquired by Advanced Micro Devices, Inc. ("AMD") through AMD's wholly owned subsidiary Thrones Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.     On October 27, 2020, Xilinx and AMD issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated October 26, 2020 (the "Merger Agreement") to sell Xilinx to AMD.  Under the terms of the Merger Agreement, each holder of Xilinx common stock will receive 1.7234 shares of AMD common stock for each share of Xilinx common stock they own (the "Merger Consideration").  Upon closing of the merger, Xilinx stockholders are expected to own approximately 26% of the outstanding shares of AMD common stock and AMD stockholders immediately prior to the merger are expected to own approximately 74% of the outstanding shares of AMD common stock.  The Proposed Transaction is valued at approximately $35 billion.

3.     On December 4, 2020, AMD filed a Form S-4 Registration Statement (the "S-4") with the SEC.  The S-4, which recommends that Xilinx stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and AMD's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by the Company's financial advisors, Morgan Stanley & Co. LLC ("Morgan Stanley") and BofA Securities Inc. ("BofA"); and (iii)

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Morgan Stanley's potential conflicts of interest.  Defendants authorized the issuance of the false and misleading S-4 in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.    In short, unless remedied, Xilinx's public stockholders will be irreparably harmed because the S-4's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6.    The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8.    Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Xilinx.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

9.    Defendant Xilinx is a Delaware corporation, with its principal executive offices located at 2100 Logic Drive, San Jose, California 95124.  The Company develops processing platforms that enable innovation across a variety of technologies.  Xilinx's common stock trades on the NASDAQ Global Select Market under the ticker symbol "XLNX."

10.    Defendant Dennis Segers ("Segers") has served as Chairman of the Board since November 2015 and has been a director of the Company since October 2015.

11.    Defendant Victor Peng ("Peng") has been President and Chief Executive Officer ("CEO") of the Company since January 2018 and a director since October 2017.  Defendant Peng also previously served as the Company's Chief Operating Officer from April 2017 to January 2018, and held several other positions with the Company since joining it in April 2008.

12.    Defendant Raman Chitkara ("Chitkara") has been a director of the Company since August 2018.

13.    Defendant Saar Gillai ("Gillai") has been a director of the Company since May 2016.

14.    Defendant Ronald S. Jankov ("Jankov") has been a director of the Company since May 2016.

15.    Defendant Mary Louise Krakauer ("Krakauer") has been a director of the Company since October 2017.

16.    Defendant Thomas H. Lee ("Lee") has been a director of the Company since May 2016.

17.    Defendant Jon A. Olson ("Olson") has been a director of the Company since May 2020.  Defendant Olson also previously served as the Company's Chief Financial Officer from June 2005 until July 2016.

18.    Defendant Elizabeth Vanderslice ("Vanderslice") has been a director of the Company since December 2000.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

19.    Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

**OTHER RELEVANT ENTITIES**

20.    AMD is a Delaware corporation with its principal executive offices located at 2485 Augustine Drive, Santa Clara, California 95054.  AMD is a global semiconductor company.  For over 50 years, it has driven innovation in high performance computing, graphics and visualization technologies ─ the building blocks for gaming, immersive platforms and the data center.  AMD's common stock trades on the NASDAQ Global Select Market under the ticker symbol "AMD."

21.    Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

22.    Xilinx designs and develops programmable devices and associated technologies, including: integrated circuits ("IC") in the form of programmable logic devices ("PLD"), including programmable System on Chips ("SoC"), three-dimensional ICs ("3D IC"), and Adaptive Compute Acceleration Platform ("ACAP"): a highly integrated multi-core heterogeneous compute platform; software design tools to program the PLDs; software development environments and embedded platforms; targeted reference designs; printed circuit boards; and intellectual property ("IP"), which consists of Xilinx and various third-party verification and IP cores.  In addition to its programmable platforms, Xilinx provides design services, customer training, field engineering and technical support.

23.    Additionally, Xilinx develops processing platforms that enable rapid innovation across a variety of technologies – from the endpoint to the edge to the cloud.  Xilinx is the inventor of field programmable gate arrays ("FPGA"), hardware programmable SoCs and ACAP, designed to deliver dynamic processor technology in the industry and enable the adaptable, intelligent and

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

connected world of the future.  The Company's product portfolio is designed to provide high integration and quick time-to-market for electronic equipment manufacturers in sub-markets such as data center, wireless, wireline, aerospace and defense, test, measurement and emulation, industrial, scientific and medical, automotive, audio, video and broadcast and consumer.

24.    On October 21, 2020, Xilinx announced its second quarter of fiscal 2021 financial results, reporting record Data Center Group ("DCG") revenue, with 23% sequential and 30% annual growth; net revenues of $767 million for the quarter, a 5% increase from the prior quarter; GAAP net income for the quarter of $194 million, or $0.79 per diluted share, a 107% increase from the prior quarter of fiscal 2021; and operating income of $205 million, a 17% increase from the prior quarter of fiscal 2021.  The Company also declared a quarterly cash dividend of $0.38 per outstanding share of common stock payable on December 2, 2020.  Defendant Peng commented on the Company's results, stating:

> We are pleased with our fiscal second quarter performance, which came in above the mid-point of guidance.  Our strong results were driven by another record quarter in our Data Center Group and Aerospace & Defense businesses, as well as improvement in our Automotive and Broadcast end markets.  In addition, RFSoC sales ramped meaningfully with a tier-1 wireless OEM customer for 5G radio deployment in North America.
>
> Our strategic transformation to an adaptive platform company continues with healthy design win momentum during the quarter.  Notable customer wins included a marquee SmartNIC design win with a U.S. tier-1 hyperscaler, as well as Zynq MPSoC design wins with Subaru and Continental.  We also remain on track with our Versal program ramp with a leading wireless OEM later this year.

**The Proposed Transaction**

25.    On October 27, 2020, Xilinx and AMD issued a joint press release announcing the Proposed Transaction.  The press release states, in relevant part:

> SILICON VALLEY, Calif., Oct. 27, 2020 -- AMD (NASDAQ: AMD) and Xilinx (NASDAQ: XLNX) today announced they have entered into a definitive agreement for AMD to acquire Xilinx in an all-stock transaction valued at $35 billion.  The combination will create the industry's leading high performance computing company, significantly expanding the breadth of AMD's product portfolio and

- 6 -

customer set across diverse growth markets where Xilinx is an established leader. The transaction is expected to be immediately accretive to AMD margins, EPS and free cash flow generation and deliver industry-leading growth.

The acquisition brings together two industry leaders with complementary product portfolios and customers. AMD will offer the industry's strongest portfolio of high performance processor technologies, combining CPUs, GPUs, FPGAs, Adaptive SoCs and deep software expertise to enable leadership computing platforms for cloud, edge and end devices.  Together, the combined company will capitalize on opportunities spanning some of the industry's most important growth segments from the data center to gaming, PCs, communications, automotive, industrial, aerospace and defense.

"Our acquisition of Xilinx marks the next leg in our journey to establish AMD as the industry's high performance computing leader and partner of choice for the largest and most important technology companies in the world," AMD President and CEO Dr. Lisa Su said.  "This is truly a compelling combination that will create significant value for all stakeholders, including AMD and Xilinx shareholders who will benefit from the future growth and upside potential of the combined company.  The Xilinx team is one of the strongest in the industry and we are thrilled to welcome them to the AMD family.  By combining our world-class engineering teams and deep domain expertise, we will create an industry leader with the vision, talent and scale to define the future of high performance computing."

"We are excited to join the AMD family.  Our shared cultures of innovation, excellence and collaboration make this an ideal combination.  Together, we will lead the new era of high performance and adaptive computing," said Victor Peng, Xilinx president and CEO. "Our leading FPGAs, Adaptive SoCs, accelerator and SmartNIC solutions enable innovation from the cloud, to the edge and end devices.  We empower our customers to deploy differentiated platforms to market faster, and with optimal efficiency and performance.  Joining together with AMD will help accelerate growth in our data center business and enable us to pursue a broader customer base across more markets."

With a combined team of 13,000 talented engineers and over $2.7 billion of annual R&D investment, AMD will have additional talent and scale to deliver an even stronger set of products and domain-specific solutions.

**Additional Transaction Details**

Under the terms of the agreement, Xilinx stockholders will receive a fixed exchange ratio of 1.7234 shares of AMD common stock for each share of Xilinx common stock they hold at the closing of the transaction.  Based on the exchange ratio, this represents approximately $143 per share of Xilinx common stock.  Post-closing, current AMD stockholders will own approximately 74 percent of the combined company on a fully diluted basis, while Xilinx stockholders will own approximately 26 percent.  The transaction is intended to qualify as a tax-free reorganization for U.S. federal income tax purposes.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

AMD expects to achieve operational efficiencies of approximately $300 million within 18 months of closing the transaction, primarily based on synergies in costs of goods sold, shared infrastructure and through streamlining common areas.

The transaction has been unanimously approved by the AMD and Xilinx Boards of Directors.  The acquisition is subject to approval by AMD and Xilinx shareholders, certain regulatory approvals and other customary closing conditions.  The transaction is currently expected to close by the end of calendar year 2021.  Until close, the parties remain separate, independent companies.

**Management and Board of Directors**

Dr. Lisa Su will lead the combined company as CEO.  Xilinx President and CEO, Victor Peng, will join AMD as president responsible for the Xilinx business and strategic growth initiatives, effective upon closing of the transaction.  In addition, at least two Xilinx directors will join the AMD Board of Directors upon closing.

**Insiders' Interests in the Proposed Transaction**

26.     Xilinx insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Xilinx.

27.     Notably, certain Company insiders will secure positions for themselves with the combined company.  For example, under the terms of the Merger Agreement, defendant Peng will join AMD as President responsible for the Xilinx business and strategic growth initiatives, effective upon closing of the merger.  AMD has also agreed to appoint at least two members of the Xilinx board of directors to the AMD board of directors as of the effective time.

28.     Moreover, Xilinx insiders stand to reap substantial financial benefits for securing the deal with AMD.  Pursuant to the Merger Agreement, all outstanding options and restricted stock units ("RSU") will vest and convert into the right to receive the Merger Consideration.  The following table summarizes the number and value of RSUs held by Company insiders:

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

| Name | Number of Xilinx Restricted Stock Units (#) | Estimated Value of Xilinx Restricted Stock Units ($) |
|---|---|---|
| **Named Executive Officers** | | |
| Victor Peng | 205,016 | 24,628,572 |
| Brice Hill | 60,310 | 7,245,040 |
| William Christopher Madden | 62,565 | 7,515,933 |
| Salil R. Raje | 62,565 | 7,515,933 |
| Vamsi Boppana | 46,451 | 5,580,158 |
| Lorenzo A. Flores(1) | — | — |
| **Other Executive Officers** | | |
| Sumeet Gagneja | 20,351 | 2,444,765 |
| Catia Hagopian | 41,210 | 4,950,557 |
| Vincent L. Tong | 35,361 | 4,247,916 |
| Mark David Wadlington | 51,241 | 6,155,581 |
| **Non-Employee Directors** | | |
| Dennis Segers | 2,300 | 276,299 |
| Raman K. Chitkara | 2,300 | 276,299 |
| Saar Gillai | 2,300 | 276,299 |
| Ronald S. Jankov | 2,300 | 276,299 |
| Mary Louise Krakauer | 2,300 | 276,299 |
| Thomas H. Lee | 7,200 | 864,936 |
| Jon A. Olson | 2,300 | 276,299 |
| J. Michael Patterson(2) | — | — |
| Marshall C. Turner(3) | — | — |
| Elizabeth W. Vanderslice | 2,300 | 276,299 |

29.    In addition, if they are terminated in connection with the Proposed Transaction, Xilinx insiders stand to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(2) | Equity ($)(3) | Perquisites / Benefits ($)(4) | Total ($)(5) |
|---|---|---|---|---|
| Victor Peng | 5,747,501 | 24,628,572 | 21,058 | 30,397,131 |
| Brice Hill | 1,650,000 | 1,811,260 | 29,941 | 3,491,201 |
| William Christopher Madden | 1,575,001 | 7,515,933 | 28,816 | 9,119,750 |
| Salil R. Raje | 1,575,001 | 7,515,933 | 29,941 | 9,120,875 |
| Vamsi Boppana | 1,188,000 | 5,580,159 | 32,650 | 6,800,809 |
| Lorenzo A. Flores(1) | — | — | — | — |

## The S-4 Misleads Xilinx Stockholders by Omitting Material Information

30.    On December 4, 2020, defendants caused to be filed the materially misleading and incomplete S-4 with the SEC.  Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the S-4 is rendered misleading by the omission of critical information, including: (i) the Company's and AMD's financial projections; (ii) the financial analyses performed by the Company's financial advisors, Morgan Stanley and BofA; and (iii) Morgan Stanley's potential conflicts of interest

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

*Material Omissions Concerning Xilinx's and AMD's Financial Projections*

31.    The S-4 omits material information regarding Company management's and AMD's financial projections.

32.    In connection with the Xilinx Financial Projections, the S-4 fails to disclose: (i) all line items used to calculate Adjusted EBITDA, Adjusted EPS, and Unlevered Free Cash Flow; and (ii) the financial projections for years 2026 - 2032.

33.    In connection with the Xilinx Adjusted AMD Projections, the S-4 fails to disclose: (i) all line items used to calculate Adjusted EBITDA unburdened by SBC, Adjusted EBITDA burdened by SBC, Adjusted EPS unburdened by SBC, and Unlevered Free Cash Flow; and (ii) the financial projections for years 2026 - 2032.

34.    In connection with the AMD Projections, the S-4 fails to disclose: (i) all line items used to calculate Adjusted EBITDA, Adjusted EPS, and Unlevered Free Cash Flow; and (ii) the financial projections for years 2026 - 2032.

35.    With respect to the AMD Adjusted Xilinx Projections, the S-4 fails to disclose: (i) all line items used to calculate Adjusted EBITDA unburdened by SBC, Adjusted EBITDA burdened by SBC, Adjusted EPS unburdened by SBC, Adjusted EPS burdened by SBC, and Unlevered Free Cash Flow; and (ii) the financial projections for years 2026 - 2032.

36.    If a proxy statement discloses financial projections and valuation information, such projections must be complete and accurate.

37.    The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following sections of the S-4: "AMD Unaudited Financial Projections" and "Xilinx Unaudited Financial Projections."

*Material Omissions Concerning Morgan Stanley's and BofA's Financial Analyses*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

38.    The S-4 omits material information regarding Morgan Stanley's and BofA's financial analyses supporting their fairness opinions.

39.    The S-4 describes Morgan Stanley's and BofA's fairness opinions and the various valuation analyses performed in support of their opinions.  However, the description of Morgan Stanley's and BofA's fairness opinions and analyses fails to include key inputs and assumptions underlying these analyses.  Without this information, as described below, Xilinx's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Morgan Stanley's and BofA's fairness opinions in determining whether to vote in favor of the Proposed Transaction.

40.    With respect to Morgan Stanley's *Relative Discounted Equity Value Analysis* the S-4 fails to disclose: (i) the Xilinx and AMD Street Case projections used in the analysis; (ii) Morgan Stanley's basis for applying ranges of P/E multiples of 30.0x to 50.0x and 24.0x to 36.0x for AMD and Xilinx, respectively; and (iii) the individual inputs and assumptions underlying the discount rates of 9.3% and 6.8%.

41.    With respect to Morgan Stanley's *Relative Public Trading Multiples Analysis*, the S-4 fails to disclose the individual multiples and financial metrics for each of the companies observed in the analysis.

42.    With respect to Morgan Stanley's *Relative Discounted Cash Flow Analysis*, the S-4 fails to disclose: (i) the stand-alone unlevered after-tax free cash flows that AMD and Xilinx were forecasted to generate during the fourth quarter of calendar year 2020 through calendar year 2031 in the case of AMD, and during the second-half of fiscal year 2021 through fiscal year 2032 in the case of Xilinx, and all underlying line items; (ii) the terminal values for Xilinx and AMD; (iii) Morgan Stanley's basis for using terminal EBITDA multiples ranging from 11.0x to 15.0x; (iv) the

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

individual inputs and assumptions underlying the discount rates ranging from 8.3% to 10.3% and 6.8% to 7.8%; and (v) net debt as used in the analysis.

43.     With respect to Morgan Stanley's *Precedent Premia Analysis*, the S-4 fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

44.     With respect to Morgan Stanley's *Relative Equity Research Analysts' Future Price Targets* analysis, the S-4 fails to disclose: (i) the price targets used in the analysis; and (ii) the sources thereof.

45.     With respect to BofA's *Selected Publicly Traded Companies Analyses* and *Selected Precedent Transactions Analysis*, the S-4 fails to disclose the individual multiples and financial metrics for each of the companies and transactions observed in the analyses, respectively.

46.     With respect to BofA's *Discounted Cash Flow Analysis* of Xilinx, the S-4 fails to disclose: (i) the standalone unlevered, after-tax free cash flows that Xilinx was forecasted to generate during Xilinx's third and fourth quarters of fiscal year 2021 and fiscal years 2022 through fiscal year 2032 and all underlying line items; (ii) the terminal values for the Company; (iii) BofA's basis for using perpetuity growth rates of 2.75% to 3.25%; (iv) the implied terminal multiples; and (v) the individual inputs and assumptions underlying the discount rates ranging from 6.5% to 8.5%.

47.     With respect to BofA's *Discounted Cash Flow Analysis of AMD*, the S-4 fails to disclose: (i) the standalone unlevered, after-tax free cash flows that AMD was forecasted to generate during AMD's fourth quarter of fiscal year 2020 and fiscal years 2021 through 2031 and all underlying line items; (ii) the terminal values used in the analysis; (iii) BofA's basis for using perpetuity growth rates of 3.50% to 4.00%; (iv) the implied terminal multiples; and (v) the individual inputs and assumptions underlying the discount rates ranging from 8.50% to 10.50%.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

48.    With respect to BofA's analysis of price targets, the S-4 fails to disclose: (i) the price targets observed in the analysis; (ii) the sources thereof; and (iii) quantification of the individual inputs and assumptions underlying the discount rate of 9.5%.

49.    Without such undisclosed information, Xilinx stockholders cannot evaluate for themselves whether the financial analyses performed by Morgan Stanley and BofA were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Morgan Stanley's and BofA's opinions and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

50.    The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following section of the S-4: "Opinion of Xilinx's Financial Advisors."

***Material Omissions Concerning Morgan Stanley's Potential Conflicts of Interest***

51.    The S-4 fails to disclose material information concerning the potential conflicts of interest faced by Morgan Stanley.

52.    The S-4 sets forth:

> Under the terms of its engagement letter, Morgan Stanley provided Xilinx with financial advisory services and a financial opinion in connection with the merger, described in this section and attached as <u>Annex D</u> hereto, and for such services Xilinx has agreed to pay Morgan Stanley a transaction fee of $70 million, which is contingent upon the closing of the merger, and up to an additional $40 million based on a calculation structure determined by the value of Xilinx's shares in the merger (as measured by the trading price of the AMD common stock received in the merger.

S-4 at 126.  The S-4, however, fails to disclose the specific calculation structure under which "up to an additional $40 million" will be paid to Morgan Stanley, and whether defendants intend to pay

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

such fee to Morgan Stanley.

53.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

54.     The omission of this material information renders certain portions of the S-4 materially misleading, including, inter alia, the following section of the S-4: "Opinion of Morgan Stanley."

55.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

56.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the S-4.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Xilinx will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

57.     Plaintiff repeats all previous allegations as if set forth in full.

58.     During the relevant period, defendants disseminated the false and misleading S-4 specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

59.    By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the S-4.  The S-4 was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about the Company's and AMD's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Morgan Stanley and BofA, and Morgan Stanley's potential conflicts of interest.  The defendants were at least negligent in filing the S-4 with these materially false and misleading statements.

60.    The omissions and false and misleading statements in the S-4 are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

61.    By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

62.    Because of the false and misleading statements in the S-4, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act

63.    Plaintiff repeats all previous allegations as if set forth in full.

64.    The Individual Defendants acted as controlling persons of Xilinx within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Xilinx, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

65.     Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The S-4 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the S-4.

67.     In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The S-4 purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

68.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Xilinx's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Xilinx, and against defendants, as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Xilinx stockholders;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.    Granting such other and further relief as this Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff demands a trial by jury on all claims and issues so triable.

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Dated: December 30, 2020

**WEISSLAW LLP**
Joel E. Elkins

By: */s/ Joel E. Elkins*

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone:  310/208-2800
Facsimile:   310/209-2348
                    -and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY  10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*

**OF COUNSEL:**

**BRAGAR EAGEL & SQUIRE, P.C.**
Alexandra B. Raymond
810 Seventh Avenue, Suite 620
New York, New York 10019
Tel: (212) 308-1869
Fax: (212) 214-0506
Email: raymond@bespc.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS